Good morning, Your Honors. May I please the Court, Daniel T. LaBelle for Plaintiff-Appellant James Thomas Long Photography. So there are some interesting issues here. There's sort of a wide-ranging panoply of issues with the two motions. First, defendant appellee's motion for summary judgment and plaintiff's motion for leave to amend the complaint. But I want to take a step back and highlight the importance of this case sort of in the real world. Here we have a situation where a company, AT&T, had a dying Yellow Pages business that they sought to revitalize by using a new technology. In doing so, they bought, they did what a lot of big companies do, and they bought somebody that had thought of it first. What they didn't do in the process was take it slow to make sure that they knew the technology was going to do what they were saying, what they thought it was going to do, and make sure that they were treating the consumers fairly. Are you talking about the merits of your case? I am, Your Honor. Is that really germane to what we're going to talk about today? Well, as far as the background of this individual case. We know the background. We've read all this stuff. Okay, Your Honor. And I would certainly appreciate the court's guidance with which topics among these. Okay. All right. Who's Piero Construction? Ari Piero Construction was an absentee class member who seeks to intervene in the case. Well, wait a second. Seeks to intervene. Did Piero Construction file a motion to intervene in this case at any time? No. The procedure we used was a motion for leave to amend. But that was your motion. Correct, Your Honor. And was it supported by some kind of an affidavit or a declaration from Piero Construction itself? I do not believe there was a declaration by Ari Piero. Piero Construction is this thing that's flying around in the air. And the other thing that caught my attention was Judge Seaborg said at the end, with respect to amending, to bring Piero Construction in, justice also does not require that leave to amend be given in the circumstances here because, according to Long, that's your case, the proposed new plaintiff's claims will not be barred by the statute of limitations absent amendment. So once Judge Seaborg said that, did Piero Construction then file its own case? No, it did not, Your Honor. Well, then I don't understand this. You say Piero Construction is chafing at the bit to get into this case. The judge didn't let him in, but the judge basically invited him to come in and said the statute hasn't run. So who represents Piero Construction?  I am counsel for Piero Construction. And you didn't file another case after Judge Seaborg said you can do that? No. You start by telling us this is really important in the real world and he invited you. Go for it. Right. Well, the reason here is because the case that was filed, this case had been pending for quite some time, although it had not advanced because prior to this, as you know, there was another trip before this court where the case was sent back and the Ninth Circuit instructed the court to hear. So all this time in Piero Construction, and you were of counsel, you were the lawyer for Piero Construction during all this time? Well, I'm not sure how to respond to that. Well, then let me back up again and say, why did you not file a case on behalf of Piero Construction in light of your view that this is a very important case in the real world? Because we already have the case on file and we don't want to lose the claims of the absentee class members that were pending since. If you lose here, then what? Then there will have to be a case from scratch. Ari Piero is supporting to the court. Has the statute now run against Piero? Well, see, there is – it's an interesting question because currently the Supreme Court has a case before it pending where there seemed to be revisiting the American Pipe Tolling Doctrine, which, as your Honors know, has been a longstanding rule guiding class action law that says as soon as a class action is filed, absentee class members do not have to come forward and file their own cases because that would just demolish the efficiencies that are created by Rule 23. The idea of Rule 23 is that as soon as a class action is filed, the claims of all the other potential class members are being represented in that action. So are you saying that we need to hold this case for the results of the Supreme Court decision? I'm not saying that American Pipe is still good law, but it's also sort of aside the point because if the Supreme Court comes back with a decision that if this case is also dismissed, then a new case will have to be filed, and that will only go back so far as the statutes in this case allow, which is four years. The way I understand the record, there's no way your client can ever be pursued for these charges, which he never paid in the first place. Am I right about that? You are not. I believe the district court believed that, but that's not an accurate view of the status of the debt. Well, by failure to file a compulsory counterclaim, that operates under state law, among other things, as a bar, either preclusion or some kind of res judicata. And so not only have they said they're not going to pursue your client, but they're precluded as a matter of law from doing that by not filing the compulsory counterclaim. What am I missing there? Right, but all we know, the only evidence in the record is a declaration saying that AT&T wrote off the debt. But there's evidence in the record that shows – I understand, Your Honor. And they stated in their papers that they represented that we will not pursue any claims against Mr. Long for money that he might owe us. So they made the representation, and now by force of law, they're barred by res judicata. So it doesn't appear that Yellow Pages would be able to bring a claim against Mr. Long, even if they wanted to, plus they made the representation that they would not. So why aren't they barred? Under what theory would they be able to bring a claim? You're correct. It's not that they are not barred. It's that a third party who may have been assigned the debt is not barred. Well, that collection agency that sent some letters? Correct. There's evidence in the record that shows that. But since they have no right to pursue it, they don't have – yeah. I mean, that's just meaningless. They don't have anything to pursue. They stand in the shoes of the people who failed to file the compulsory counterclaim who weren't paid in the first place and said we're not going to pursue this. They don't have any better standing than the person to whom the debt is allegedly owed, do they? No, they don't. No, they don't. So, I mean, I can't see any possible way that your client can be pursued for what you're saying you're afraid of. Well, he's interesting. He's also going to be pursued for the costs in this case. He's being pursued for the costs in the previous case. Who, by you? No, by defendants. They've put into the record that for the previous dismissal where he came back here. Oh, they're asking for costs? They've asked for costs. And not only that, they've assigned it. Ingenio, the original party, assigned it to the current defendants. And they've reached an arrangement where Ingenio will get 10 percent of the $900. I'm not aware of any case that would sweep costs into allowing you to continue to have standing to pursue this case. Is there any case that says costs ordered by a court? This touches on the previous cases, this court and the U.S. Supreme Court's back and forth on why class representatives should not be allowed to be picked off and why there is a right in pursuing class certification that exists on its own regardless of the status of a plaintiff's individual claims. And that's because, and this is pointed out by Chief Justice Rehnquist in 1980, one of the principles of class action litigation is that when the plaintiff brings the case seeking class certification, he or she is also seeking the right to spread costs among the class. Sure. So this assumes that you'll be able to get your client's foot into the glass slipper of picking off. I mean, the Rule 68 cases don't seem to be on point. In Campbell-Ewell, the Supreme Court said where there's been an offer of judgment, the plaintiff doesn't have anything, doesn't have the relief. Nary a penny, I think, is what the opinion said. Here, Yellow Pages has given Long all the relief he seeks, which is Long doesn't have to pay anything, and he isn't owed anything from Yellow Pages. Right. So that seems to be a particular issue related to Mr. Long's situation. I suppose there could be other class members who either paid money or who Yellow Pages is pursuing for costs. But in any event, if there was another class member who owed money, who had paid money to Yellow Pages and was seeking that money back, then even if Yellow Pages had made an offer of judgment under Campbell-Ewell, the plaintiff doesn't have to accept it, and the court can't enter judgment as long as the plaintiff has a live claim. But Long is not situated in that way. Long has already gotten everything to which he's entitled. It's more like the already v. Nike case. It is not, Your Honor, because Long has not gotten everything he's entitled to. And I want to point out one of the differences. What did he not get? He didn't get he asked for costs, attorney's fees, declaratory judgment and relief. That's not the restitution that's allowed under his claims. I mean, he just brought a $1,700 claim, right? No. There was also a standalone claim under California law for declaratory relief, which would include. But as I read that claim, the dec relief was to cut off Yellow Pages' right to pursue him for money he owed, which he has now received. Right. And that's important in several respects because that. Well, he's gotten everything that he claims. He has not. He has not. He spent money in order to avoid his business being harmed by AT&T's practices and putting false information on the Internet. He spent money in trying to pre-litigation. So damages. Trying to get out of this. But I thought it was not disputed that he was only entitled to. He was only claiming for restitution. And that's just not the case. That's just not the case. It's in the complaint. The claims for those sums of money, which are nominal damages. And how much are you talking about? We're talking about $75 for registration of the service mark and about $5 for U.S. registered mail. Isn't that $80? That is not at all what I'm saying, Your Honor. And I want to touch on the issue of the debt. Again, the evidence is that AT&T wrote off the debt. That is not the same as a discharge. It doesn't matter because that's barred. No, but there are real-world effects of having an alleged debt out there. And AT&T saying that it writes it off is not the same as Long getting a judgment in his favor or a declaration by defendants that the debt is not valid. It's a different thing. And that goes back in time where creditors now can look at that and say, oh, you know, James Thomas Long Photography didn't pay this debt of $1,000 to AT&T. If we were to agree with you, how would we rectify that? Issue some kind of an order to the credit reporting agencies? Remove this from your books? Well, that, Your Honor, is not something for this Court to do. That's something for the Court below. But I would like to reserve two minutes, and I'll come back and answer that more thoroughly if you feel necessary. Thank you. Your Honors, good morning. May it please the Court, my name is James Bogan, and I'm here with my colleague, Alan Garrett. I would like to start with the leave to amend issue, if that's acceptable to the Court. And I wanted just to cover some of the things that happened below because some things didn't come through as clearly in the briefing as they should have. But let me just run through it very quickly. November 2010, Long sued the wrong party. That's Ingenio. December 2010, we removed, explaining that Ingenio was the wrong party. Then we answered, explaining again that Ingenio was the wrong party. And then March 2011, we had a case management conference before Judge Seaborg. We took care of business. We filed a motion for summary judgment on Ingenio's behalf right before the case management conference. Seven months goes by. In October of 2011, Judge Seaborg entered summary judgment and entered final judgment. As we all know, the case was appealed, came to this Court. This Court affirmed the grant of summary judgment to Ingenio, but remanded on the issue of leave to amend. And Seaborg — Judge Seaborg's order for a post-remand proceedings was entered on November 15, 2013, and it's interesting and relevant to the prior discussion. He observed that Long did not bother to file a motion for leave to amend in the seven months leading up to the final judgment on the first go-around. He says — he said in his order, it's not clear why he didn't file a new action against the proper defendants. And he directed Long to file a motion to amend, and he actually said this, quote, if he still wishes to pursue this action. That was what Judge Seaborg said. So Long, in December 2013, moves to amend. There's no mention of Piero. There's no mention that he's undertaking an effort to find a new class representative. In September of 2014, leave to amend is granted over our objection. Long then waits nearly three months until December 19, 2014, to file this first amended complaint, and that's when something very important happens next. February 12, 2015, the parties filed their joint case management statement. It's in the supplemental excerpts of record. We said in that statement to Judge Seaborg, Your Honor, we intend to move for summary judgment to kill this case in its entirety. And the parties agreed. They expressly agreed in the scheduling section. They said to Judge Seaborg, resolve summary judgment first, and you don't need to think about class certification unless summary judgment is denied. So that was the procedure that the parties asked the Court to follow. Then a week later, and again, there's no mention of Piero, a week later, February 19, 2015, we move for summary judgment. We take care of business. We have a conversation with Judge Seaborg. That procedure is presented to Judge Seaborg. We're going to do summary judgment first, and you don't even need to think about class certification unless that summary judgment motion is denied. Long filed his brief in opposition to summary judgment in March of 2015. And then on April 9, 2015, we get a motion to amend to add Piero, this party that's floating in the periphery. It's less than five pages long. No evidence is supported, is filed in support of this motion to amend. We don't have a declaration from Long. We don't have a declaration from Long's counsel. We don't have a declaration from Piero. We have no explanation of the delay with respect to adding Piero. And then, as we all know, in August of 2015, Judge Seaborg enters summary judgment. So here's the prejudice. And the Court, in evaluating these factors, denied leave to amend on grounds of circumvention of summary judgment, undue delay, and prejudice. And starting with prejudice first, we have a multiyear delay where Long stubbornly pursued the wrong defendant even after we told him who to sue. Then you look at Piero. What is the deal with Piero? We don't know that much about Piero. Piero alleges that back in May 2010, a YP premise rep walked into the office of Piero, lied to Piero about the performance of the advertising product. And as soon as they started delivering the service, Piero realized that she had been defrauded. This is back in May 2010, seven years ago. It's very difficult to develop facts about in 2018, if this case is remanded, or 2019, about what people were talking about in May 2010. Since then, there's been multiple corporate changes. These companies have had to keep this contingent liability on their books. We lost the ability, and I think this is significant, we addressed this in our brief, to have this case resolved with closely related overlapping class actions in the Southern District of New York. We had similar class actions were filed in New Jersey and in the Southern District of California. We had all of those cases transferred to the Southern District of New York, overlapping claims. In 2012, Judge Gardeffi from the Southern District of New York denied certification in a very lengthy ruling, basically saying individual issues predominate because this case is based on oral representations, and that's what this case is based on. And there's also, Your Honors, the wear and tear of this litigation, even after the first appeal. Case comes back to the district court. Judge Seaborg says, do you still intend to pursue this case? Then the district court grants leave, really because this court remanded on the leave question. I think it's fair to say that Seaborg reluctantly granted leave, but he did. But then he waits almost 3 months to file a First Amendment complaint, and then we agree on a procedure in the Joint Case Management Statement. This is how we're going to do it. Okay. We've got an operative complaint. Long has finally gotten his opportunity to file his First Amendment complaint, and we agree. Let's do summary judgment first. No need to address class certification if summary judgment is granted. He doesn't disclose Piero. And then a motion to amend is lobbed in, and that's supposed to dismantle this entire process with all of this delay? The reply brief, Your Honor pointed out, there was no motion for intervene that was filed. The motion to intervene issue wasn't raised until the reply. That's the first time it was raised. And in the briefing before this Court, you get the impression that a motion to intervene was filed. So there's five reasons. There's five reasons why leave to amend should be affirmed. There's discretion. We all know that a district court has especially broad discretion to deny leave to amend after he's given an opportunity to amend the first time. And that proposition is stated in the Kaplan case, 1994. It's cited in our brief. Prejudice. Kaplan said, and this statement is relevant to these facts. Kaplan said, expense, delay, and wear and tear on individuals and companies count toward prejudice. So there's prejudice. There's delay. That's reason three. The Cates, the Ninth Circuit in Cates in 1985 said, Denial of leave to amend should be affirmed where no reason is given for the delay. The fourth reason is circumvention of summary judgment. We've got four cases cited in the briefs that stand for that proposition. Schlachter-Jones in 91, MV American Queen in 83, Roberts in 81, and Ennis in 1999. Judge Seaborg, looking at this record, knew exactly what was happening, which is that the motion for leave to amend was lobbed in to circumvent summary judgment. And finally, there's the interest of justice under Rule 15. Judge Seaborg said, as Judge Chalk pointed out, justice does not require leave to amend, given Long's assertion below that Piero's claims were not time-barred. And so there's no way I would respectfully submit that anyone can say that Judge Seaborg, having dealt with two rounds of this case, abused his discretion when he denied leave to amend. Roberts, which is the standard of review, correct? The standard of review is abuse of discretion, and it's even amped up because he already gave leave to amend once. Can you address the opposing counsel's argument that Long did not get all the relief he requested because he didn't get the additional costs he incurred in addressing the changing the name of the company, the $80, I guess, that he's claiming? The only thing I could say is that that claim is without legal merit. He had claims for monetary relief, claims for declaratory relief, and claims for injunctive relief. The only monetary relief he could get was restitution, and he didn't dispute that. He did, as Judge Seaborg pointed out, he argued those facts, Your Honor, to basically say that he had a stake in the litigation, but he never denied below, he never disputed below, that the only monetary relief to which he was entitled was restitution, and he didn't satisfy the well-known test for restitution, which is that we had to acquire something directly from a plaintiff as a result of the misconduct such that we were capable of returning what we received. So he stated up here that the complaint does request those additional elements of monetary relief. Is that not correct? He does mention them, and my answer is, is that to the extent that he's seeking to recover those as monetary relief under these claims, that claim is without any legal merit. That's my position on that, Your Honor. Now, let me talk about the – some of the issues that have been raised in the briefing about the class issues, or maybe if – since I only have four and a half minutes left, are there any questions that Your Honors would like me to address with respect to mootness or picking off? Let me just say that a class was not certified in this case. And so let's look at Long. When a class is not certified, Long is free to dismiss the case. He is free to abandon the case. He's free to pursue an individual settlement of the case. He could have come to us for some type of premium settlement. Class actions are settled like that all the time. So what if you had a whole class of people situated like Mr. Long is? In other words, they hadn't made a payment to Yellow Pages. The picking off theory that we've seen in Campbell-Yould and our other cases, Pitts and the like, it seems like it could be in play there, because the defendant says, okay, we'll make a representation, we won't make a compulsory counterclaim against you, new name plaintiff. Well, we will not seek to recover charges from you, new name plaintiff. So then we get into the area where it's a transitory claim, where the Supreme Court has said and we've said that makes it transitory, because the defendant can continue picking off the claims of the name plaintiff. What happened here was an unremarkable act of voluntary cessation. With respect to all of these class members that refuse to pay and only have claims for declaratory injunctive relief, there's no record that any of those people actually exist. Piero, who we tried to bring in, has a monetary claim. Monetary claims are not inherently transitory. When you look, what he says in his brief, he says that misconduct continues to this day, okay? That means if you accept all of his allegations as true, we've defrauded all of these people, we've taken their money, like Piero, there are thousands upon thousands of class members out there who today can file a lawsuit and challenge the conduct. This is not a situation where the conduct evades review, like in a pretrial detention context, where I'm in pretrial detention, like for four days, and then I'm sent out. And then other people come into pretrial detention. And you're saying there's no subclass of people who did not pay money? I'm not aware. There's certainly no record evidence that those people exist. And I'm not aware that any such people exist. Long just seems to be, in my experience with the company, Long, I mean, he, you know, he seems to be in a unique position. And let me say another thing, too. The courts have carefully created these exceptions to mootness doctrine that were reviewed like in pits. And it was usually in the context of claims for declaratory relief or injunctive relief. And those exceptions to mootness doctrine were carefully created over time. And then what really, through the, what really became hot, if you will, over the past five years was all about the monetary claims. Can you pick off a monetary claim through a creative device like an offer of judgment or paying the money in the court? Well, it's now clear, especially in this circuit, that it is impossible now, especially after a case like Chen. You can't pick off a monetary claim anymore. Pits said, Pits basically said an offer of judgment before a motion for class certification moots the claim. Therefore, the claim is not moot. And what Pits was saying there is the claim is inherently transitory because it's subject to a litigation strategy capable of mooting it. That no longer exists in this circuit anymore. If somebody knows how to pick off a monetary claim, they should tell me because I sure don't know how to do it myself. And so this, we're back to a very traditional application of mootness doctrine. If this case is moot, it's mandatory. The district court has no power to act. It must dismiss. And so this case has to be fit into one of the three exceptions. It does not fit. Thank you very much. Okay. You have a few minutes of rebuttal. Thank you, Your Honors. I'm not sure what to address first, but I'd like to address the issue of prejudice. I have never been in the situation other than in this case where there's an incorrectly named defendant and the defendants themselves don't come forward and cooperate to get themselves in the case and the other defendant out. Normally, it's a very easy, simple thing where you write a short little contract. You agree to toll the claims against the defendant that's going out in exchange for the defendants coming in. Here, we wouldn't get any of that. We could not get them to agree. The opposing counsel said that they told you that you had sued the wrong person. Is that not correct? No, that is correct. They put that in their removal papers, and I called them right away to find out. Early on, you knew. Early on, I knew, and I called to find out. And they said things that were apparently not true, that ingenue had nothing to do with Long at all, and that it was these other companies. And you have to remember, part of this case is that Long entered into this agreement without ever receiving a written contract. So all the contact he had with the AT&T subsidiaries was through the phone. Over the phone, they told him over and over, we can't do that, Ingenio Inc. has the power to do that. And so it wasn't until, and like I said, I would have been very happy to bring the other companies in, and in fact, I asked for that both in the papers before the first case management conference and during the case management conference, which was held telephonically. I said, Your Honor, there's no reason to consider this motion for leave to amend that defendants filed yesterday. I would like to, sorry, motion for summary judgment that defendants filed yesterday, I would like to file leave to amend to bring in the proper parties. And His Honor said, no, we're not going to do it that way. I'm going to hear their motion first. And so he did hear their motion, and then, and this was part of what they sent me. This was all the AT&T subsidiaries involved with providing the service. And here is Ingenio Inc. up here. Is that in the record? This is in the record. I can get you the excerpts. It's in my declaration. I'd be guessing if I put a number out right now. But I want to also move on to- You're over time, so please just wrap up. Okay. This Court's recent jurisprudence and the recent jurisprudence from the Supreme Court recognizes an independent right to pursue a class action that where the cases say clearly, Chen says very clearly, and I think if Chen had come out before the district court made this decision, we wouldn't be here right now because it says there is an independent right, and it's attached to Article III. There's Article III standing to seek class certification when you had claims against the defendant. Thank you, Your Honor. I think we have your argument. We thank you. The case of Longby and Ingenio Inc. is submitted.
judges: Trott, Ikuta, Faber